UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ANNA EFIMENKO, | Case No. 21-cv-01550-HSG |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| THE CATALINA MARKETING CORPORATION GROUP LIFE PLAN, et al., | Re: Dkt. No. 31 |
| Defendants. | |

Pending before the Court is the motion to dismiss filed by Defendants Catalina Marketing Corporation Group Life Plan and Catalina Marketing Corporation (collectively, "Catalina"). Dkt. No. 31. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

**I.   BACKGROUND**

Plaintiff Anna Efimenko filed this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") in March 2021. *See* Dkt. No. 1. She filed an amended complaint in May 2021. *See* Dkt. No. 27 ("FAC").

The Complaint alleges that Nikita Toulinov, Plaintiff's husband, died of a sudden heart attack in Moscow, Russia on February 25, 2020. *Id.* at ¶ 22. Mr. Toulinov, a citizen and resident of the United States, was visiting Russia on an extended trip to spend time with his disabled mother. *Id.* at ¶¶ 14, 17. At the time of his death, Mr. Toulinov was an employee of Catalina and had made regular payments to receive life insurance benefits under the Catalina Marketing Corporation Group Life Plan (the "Plan"), insured by Lincoln National Corporation and Lincoln

Life Insurance Company of Boston ("Lincoln"). *Id.* at ¶¶ 12, 15. Lincoln collected and retained all of Mr. Toulinov's premium payments under the Plan until his death. *Id.* at ¶ 25.

From November 2018 through his death, Mr. Toulinov worked full-time for Catalina as a remote employee but always intended to return home to California where he had lived with his wife and two children since 1995. *Id.* at ¶¶ 13, 15, 19. Accordingly, Catalina designated Mr. Toulinov as a California employee and made salary payments into a California bank account. *Id.* at ¶¶ 15, 16. Catalina also submitted a "group census report" to Lincoln on February 17, 2020, which stated that Mr. Toulinov was working in Russia. *Id.* at ¶ 20. Neither Catalina nor Lincoln notified Mr. Toulinov of any additional actions he needed to complete to preserve life insurance eligibility while working abroad. *Id.* at ¶ 21.

When Mr. Toulinov passed away, Plaintiff made a timely claim for benefits as Mr. Toulinov's designated beneficiary. *See id.* at ¶ 22. But Lincoln denied the claim, explaining that the Plan did not cover employees working outside the United States without an "administrative letter on file [from Catalina] documenting [the employee]'s expat status" (referred to in this order as the "administrative expat letter"). *Id.* at ¶ 23. Lincoln argued that Mr. Toulinov was not a participant in the life insurance policy because Catalina never sent the administrative expat letter. *See id.* at ¶ 24. In response to Plaintiff's administrative appeal, Lincoln again denied benefits on the basis that Mr. Toulinov "was not working in the United States at the time of his death and his employer did not provide notification for an administrative exemption." *Id.* at ¶ 27. In its answer to the FAC, Lincoln again denied that Plaintiff is entitled to benefits under the Plan. *See* Dkt. No. 16 at ¶¶ 11, 31, 33.

Based on these facts, Plaintiff alleges five causes of action against Lincoln and Catalina. *See generally id.* In the First Cause of Action, Plaintiff seeks to recover the life insurance benefits that she alleges Defendants wrongfully denied her under §§ 502(a)(1)(B) and 503 of ERISA. *Id.* at ¶¶ 34–36. In the Second Cause of Action, Plaintiff seeks equitable relief for Defendants' alleged breach of their fiduciary duty under § 502(a)(3) of ERISA. *Id.* at ¶ 43. Plaintiff also brings state law claims for negligence, breach of contract, and equitable estoppel in her Third, Fourth, and Fifth Causes of Action. *Id.* at ¶¶ 45–60.

1  Catalina now moves to dismiss Plaintiff's Second Cause of Action under § 502(a)(3), as well as Plaintiff's state law causes of action. Dkt. No. 31.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

Defendant Catalina appears to agree that Plaintiff is entitled to benefits under the Plan, blaming Lincoln for its decision to deny coverage. *See* Dkt. No. 31 at 1 ("When it came time for Lincoln to pay life insurance benefits upon Toulinov's death, Lincoln reneged and denied the claim based upon supposed conditions that simply do not appear in the life insurance policy."); *id.*

3

at 2 ("In cases such as this, where Plaintiff's benefits were denied by Lincoln, Plaintiff has a claim for wrongful denial of benefits under ERISA § 502(a)(1)(B)."). Catalina nevertheless seeks dismissal of Plaintiff's § 502(a)(3) and state law claims. Dkt. No. 31. *First*, Catalina contends that Plaintiff's cause of action for equitable relief under § 502(a)(3) is duplicative of Plaintiff's First Cause of Action to recover benefits under §§ 502(a)(1)(B) and 503, and that Plaintiff fails to identify a valid form of equitable relief. *Id.* at 2, 5. *Second*, Catalina argues that ERISA preempts all the state law causes of action. *Id.* at 9.

### A.   Equitable Relief

Plaintiff alleges that Catalina breached its fiduciary duty under § 502(a)(3) by failing to provide the administrative expat letter to Lincoln explaining that Mr. Toulinov was temporarily working abroad. *See* FAC at ¶ 41. Plaintiff accordingly seeks to "obtain injunctive relief and all appropriate equitable relief" under § 502(a)(3). *See id.* Plaintiff asks that the Court "enjoin [Defendants'] activities that violate ERISA or the terms of the Plan." *Id.* at ¶ 43. Catalina, in response, contends that this cause of action fails to describe an acceptable form of equitable relief, and simply requests the same relief as the First Cause of Action—the "full amount of benefits owed under the Plan." Dkt. No. 31 at 2, 7. Even viewing the facts in the light most favorable to Plaintiff, as it must at this stage, the Court agrees that the complaint fails to request appropriate equitable relief under § 502(a)(3).

While § 502(a)(1)(B) enables plaintiffs to recover denied benefits, § 502(a)(3) serves as a "catch-all" provision that permits actions "to obtain other appropriate equitable relief." *See Schuman v. Microchip Technology Inc.*, 302 F. Supp. 3d 1101, 1117 (N.D. Cal. 2018). Equitable surcharge, or monetary compensation for losses beyond withheld benefits, has long been considered an appropriate form of relief under § 502(a)(3). *Id.* at 1119–20 (noting that equitable surcharge is a "a remedy for other losses caused by Defendants' alleged breach of fiduciary duty, beyond the amount of benefits allegedly withheld"); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014). An ERISA plaintiff may assert simultaneous claims under §§ 502(a)(1)(B) and 502(a)(3) provided there is no "double recovery." *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016).

4

In her initial opposition brief, Plaintiff appeared to agree with Catalina that her § 502(a)(3) claim should be dismissed. *See* Dkt. No. 33 at 8. Plaintiff stated that she "concedes Plaintiff's Second Cause of Action against Catalina fails as a matter of law." *Id.* The next day, however, Plaintiff tried to backtrack. She filed an amended opposition in which she stated that "Plaintiff's counsel realized that the Opposition erroneously conceded the Second Cause of Action [under § 502(a)(3)] against Catalina." *See* Dkt. No. 34 at 4. She now asserts that she is seeking equitable surcharge for "any potential shortfall in benefits, and over withheld premiums . . . as well as prejudgment interest on the surcharge amount, as well as for general damages." *Id.* at 8–9.

Plaintiff did not seek leave to file this second—and belated—opposition. *See* Civil L.R. 7-3(a) ("The opposition must be filed and served not more than 14 days after the motion was filed."). Nor does the opposition offer any explanation as to how counsel "erroneously conceded" one of the primary legal arguments at issue on this motion. Even if the Court were to consider Plaintiff's new arguments, however, they do not change the result.

Plaintiff now asserts that she is seeking equitable surcharge under § 502(a)(3). *See* Dkt. No. 34 at 8. But the complaint does not contain any such allegation. Rather, Plaintiff simply requests "injunctive relief and all appropriate equitable relief" to "enjoin activities that violate ERISA or the terms of the Plan." *See* FAC ¶ 43. There is no reference to equitable surcharge or relief for any "shortfall in benefits" at all. The complaint simply details why Plaintiff believes Defendants violated ERISA by failing to pay life insurance benefits under the Plan. *Id.* at 41. An injunction requiring Defendants to enforce the ERISA plan, however, is duplicative of Plaintiff's cause of action under § 502(a)(1)(B) for the "full amount of benefits owed under the Plan." *See id.* at ¶ 35. In *Schuman v. Microchip*, a case Plaintiff relies on in her amended opposition, this Court dismissed a similar request for injunctive relief for the "full amounts and benefits" of an ERISA plan under § 502(a)(3) because the remedy was duplicative of the plaintiff's initial request for withheld benefits under § 502(a)(1)(B). 302 F. Supp. 3d at 1117–18. Moreover, enforcing the terms of an ERISA plan is an express remedy under § 502(a)(1)(B). 19 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or beneficiary . . . to enforce his rights under the terms of the plan . . ."). The Court therefore **GRANTS** the motion to dismiss on this basis.

5

**B.     Preemption**

Plaintiff alleges three state law causes of action for negligence, breach of contract, and equitable estoppel. *See* FAC ¶¶ 47, 53, 60. Plaintiff contends that she brings these claims in the alternative, in case it is determined that Mr. Toulinov was not a participant of an ERISA plan because of Catalina's failure to send the administrative expat letter. Dkt. No. 33 at 12–16. If Mr. Toulinov was not a participant in the Plan, Plaintiff claims that Catalina's failure to send Lincoln the letter constituted negligence and breached Mr. Toulinov's employment contract, which guaranteed life insurance benefits. *Id.* at ¶¶ 47, 53. Plaintiff also requests that Defendants be estopped from denying her life insurance benefits on this basis. *Id.* at ¶ 60. Catalina argues that ERISA preempts these state law claims, even if pleaded in the alternative. Dkt. No. 31 at 9.

Congress enacted ERISA to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Congress accordingly included "expansive pre-emption provisions . . . to ensure that employee benefit plan regulation remained exclusively a federal concern." *Id.* (quotation omitted). Under ERISA, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209; *see also* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."). As the Supreme Court has explained, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 208–09 (quotation omitted). A state law claim is therefore "preempted by ERISA if it has a 'connection with' or a 'reference to' an ERISA-governed benefit plan." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)).

Catalina argues that all three state law claims "relate to" and have a "connection with" an ERISA plan because they are premised on the existence of—and Plaintiff's entitlement to benefits under—the Plan. *See* Dkt. No. 31 at 9–16; *see also Oregon Teamster Emps. Tr. v. Hillsboro*

6

*Garbage Disposal, Inc.*, 800 F.3d 1151, 1155 (9th Cir. 2015) ("In determining whether a common law claim has 'reference to' an ERISA plan, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.") (quotation omitted).  In her negligence claim, for example, Plaintiff alleges that "Catalina owed a duty of care to Mr. Toulinov, its employee, and Plaintiff, as a beneficiary of Mr. Toulinov's life insurance benefits through the Plan, to use due care in procurement, administration and maintenance of life insurance for Mr. Toulinov and Plaintiff."  *See* FAC at ¶ 46.  In her breach of contract and equitable estoppel claims, Plaintiff further contends that Defendants "continued to act as if Mr. Toulinov was eligible for life insurance benefits" by accepting his premiums under the Plan.  *See id.* at ¶¶ 54–55, 58.  Plaintiff's alleged damages also all flow from Defendants' failure to pay benefits under the Plan.  *See generally* FAC.

As the Ninth Circuit has pointed out, however, "ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan."  *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1106 (9th Cir. 2007).  In *Miller*, an employee's heirs brought state law actions against her former employer, Rite-Aid, to obtain life insurance coverage after her death from terminal cancer.  *Id.* at 1104.  Rite-Aid had placed the employee, Miller, on disability before her death and promised it would continue to provide life insurance coverage to her and her heirs.  *Id.* at 1104–05.  However, Rite-Aid later switched their group life insurance plan to another company.  *Id.* at 1104.  The old group life insurance plan terminated.  *Id.*  Rite-Aid also failed to notify the new life insurance company of Miller's disability status, so she was considered ineligible for coverage under the new plan because she was not actively working.  *Id.*  The new insurance company later denied the heirs life insurance benefits because Miller was not a participant in the plan at the time of her death.  *Id.* at 1105.  The heirs brought suit against Rite-Aid and the insurance companies, arguing, in part, that Rite-Aid breached its employment contract by failing to notify the new insurance company of Miller's disability status.  *Id.*

On appeal, the Ninth Circuit held that the heirs' state law claims were not preempted by ERISA because Miller was not a participant in any ERISA plan at the time of her death.  *Id.* at

1108. Since Miller was not a participant, her heirs were not beneficiaries of the plan and could not bring an ERISA claim. *Id.* The Ninth Circuit, therefore, recognized a narrow exception to ERISA preemption: ERISA does not preempt state law claims of non-participants and non-beneficiaries of a plan.

Here, Plaintiff argues that her state law claims are not preempted because they assume—as pled in the alternative—that Mr. Toulinov was *not a participant* in the Plan due to Catalina's failure to send the administrative expat letter. Dkt. No. 34 at 13, 16. Whether Mr. Toulinov was in fact a participant in the Plan at the time of his death is thus a key issue to be decided in this case. And Plaintiff only intends to pursue her state law causes of action to the extent that Mr. Toulinov was not a participant under the Plan, and to the extent she is therefore unable to pursue claims under ERISA. *See* Dkt. No. 34 at 13 ("Plaintiff has brought her [state law] claims on a conditional and alternative basis.").

Catalina suggests that Plaintiff must decide at the pleading stage whether to pursue claims exclusively under ERISA, without knowing whether Mr. Toulinov was in fact a participant in an ERISA plan at the time of his death. However, under Federal Rule of Civil Procedure 8:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.
>
> . . .
>
> A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2), (d)(3); *see also id.* at (a)(3) (requiring "a demand for the relief sought, which may include relief in the alternative or different types of relief"). As the Ninth Circuit has explained, "[p]leading in the alternative is not an unfair litigation tactic." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1149 (9th Cir. 2007). Rather, it is explicitly permitted under the Federal Rules. And nothing in ERISA appears to explicitly supersede or render inapplicable Rule 8.

Courts have permitted alternatively-pled claims to proceed at the motion to dismiss stage even in the context of ERISA, finding that Rule 8 protects plaintiffs from being "forced to hazard

a guess" between alternative theories before discovery clarifies the relevant facts. *See, e.g.*, *ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *8 (N.D. Cal. Dec. 22, 2015).

In *ILWU-PMA Welfare Plan of Trustees*, for example, the court permitted the plaintiff to plead both ERISA and state law claims in the alternative because it was not clear at the motion to dismiss stage whether ERISA governed the conduct at issue. 2015 WL 9300519 at *8. Under the plan, participants could receive healthcare from providers who agreed to pre-negotiated fees. *Id.* at *1. The plaintiff, the named fiduciary under the plan, contracted with third-party vendors to assist in the administration of the plan, including in the negotiation and payment of discounted fees from service providers. *Id.* The plaintiff sued some of these third-party vendors, arguing that they agreed to pay service providers more than was permitted under the plan, which violated defendants' contracts with plaintiff. *See id.* at *2–*3. The plaintiff brought causes of action for breach of fiduciary duties under ERISA, as well as for breach of contract and various other state law causes of action. *See id.* at *3.

The plaintiff acknowledged that under the contracts, the defendants were not fiduciaries. *Id.* But the plaintiff argued that the defendants nevertheless were de facto fiduciaries because they exercised discretion in the administration of the plan, and their performance was therefore governed by ERISA. *Id.* at *3–*5. The court declined to dismiss the state law claims until a "more fully-developed record" showed whether the defendants were in fact acting as fiduciaries under ERISA. *Id.* at *7–*8. *Accord Delano v. Unified Grocers, Inc.*, No. 2:19-CV-00225-TLN-DB, 2020 WL 903197, at *4 (E.D. Cal. Feb. 25, 2020); *Tillotson v. Valley Paving, Inc.*, No. CV S-08-1623 LKK/EFB, 2008 WL 11387037, at *3 (E.D. Cal. Oct. 9, 2008); *Coleman v. Standard Life Insurance Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003). Here too, a more fully-developed record is necessary to determine whether Mr. Toulinov was a participant under an ERISA plan.

Catalina cites a single case in support of its position that alternative pleading is not permitted in the context of ERISA. *See* Dkt. No. 31 at 9 (citing *Cox v. Eichler*, 765 F. Supp. 601, 605–07 (N.D. Cal. 1990)). In *Cox*, the district court reasoned that permitting state law claims to survive a motion to dismiss would give the plaintiff "two bites at the apple," and preserve her

9

1  ability to "try again" under preempted law. *See Cox*, 765 F. Supp. at 605.  But here, the Court will
2  not allow Plaintiff to pursue state law claims if they are preempted by ERISA.  Rather, at this
3  stage further factfinding is necessary to determine (1) whether Mr. Toulinov was a participant in
4  an ERISA plan; and therefore (2) whether these state law causes of action are in fact preempted.

5  The Court further notes that at least as alleged, Catalina collected premiums from Mr.
6  Toulinov and has not reimbursed them.  *See, e.g.*, FAC at ¶¶ 10, 12.  Under Catalina's theory,
7  however, Defendants could retain these premiums *and* withhold benefits if Mr. Toulinov was not a
8  participant under the Plan.  ERISA preemption, however, was not designed to create a windfall for
9  employers and plan administrators.  Moreover, the nature and scope of the discovery here will not
10 change substantially based on the presence of these state law causes of action:  the facts relevant to
11 the ERISA and state law causes of action are the same.  The Court finds it premature to dismiss
12 the state law causes of action, and therefore **DENIES** the motion to dismiss Plaintiff's state law
13 claims on this basis **WITHOUT PREJUDICE** to reraising the preemption issue once discovery
14 has been taken.

## IV.   CONCLUSION

16 Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to
17 dismiss.  The Court **GRANTS** the motion as to Plaintiff's claim for equitable relief under
18 § 502(a)(3).  At this stage in the litigation, it is not clear whether Plaintiff could amend her
19 § 502(a)(3) claim to address the Court's concerns.  Nevertheless, out of an abundance of caution,
20 the Court will grant Plaintiff leave to amend as to her § 502(a)(3) claim only.  The Court otherwise
21 **DENIES** the motion to dismiss.  Plaintiff may file an amended complaint within twenty-one days
22 of this order.

23 The Court further **SETS** a case management conference on April 19, 2022, at 2:00 p.m. to
24 discuss how to move this case forward efficiently.  All counsel shall use the following dial-in
25 information to access the call:

26 Dial-In:  888-808-6929;
27 Passcode:  6064255
28 For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where

10

at all possible, parties shall use landlines. The joint case management statement is due April 12, 2022.

**IT IS SO ORDERED.**

Dated: March 16, 2022

HAYWOOD S. GILLIAM, JR.
United States District Judge